**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-50

UNITED STATES TAX COURT

ESTATE OF CICERO IOAN LIMBEREA, DECEASED,
LIUDMILA CARAMAN, EXECUTRIX, AND LIUDMILA CARAMAN,
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11216-11S.                    Filed June 24, 2013.

Cicero Ioan Limberea and Liudmila Caraman, pro sese.[1]

Rachel L. Paul, for respondent.

SUMMARY OPINION

GUY, Special Trial Judge:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

_____

[1]Mr. Limberea appeared and testified when this case was called for trial.  He
passed away a few months after the trial and Ms. Caraman was appointed to serve
as executrix of his estate, which is now subject to probate in the Commonwealth
of Virginia.

petition was filed.[2]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined deficiencies in decedent and Ms. Caraman's Federal income tax and accuracy-related penalties for the years and in the amounts as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2008 | $34,364 | $6,873 |
| 2009 | 1,543 | 309 |

Cicero Ioan Limberea (decedent or Mr. Limberea) and Liudmila Caraman (Ms. Caraman) were husband and wife during the years in issue, and they filed a timely petition for redetermination with the Court pursuant to section 6213(a).  At the time the petition was filed, they resided in Virginia.

---

[2]Section references are to the Internal Revenue Code (Code), as amended and in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.  All monetary amounts are rounded to the nearest dollar.

After concessions,[3] the issues remaining in dispute are whether decedent and Ms. Caraman: (1) are entitled to a deduction of $102,567 for various expenses reported on Schedule C, Profit or Loss From Business, for the taxable year 2008, (2) received miscellaneous income of $8,088 during the taxable year 2009, and (3) are liable for accuracy-related penalties under section 6662(a) for the taxable years 2008 and 2009.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

## I. Mr. Limberea's Employment During 2008

Mr. Limberea was a certified public accountant (C.P.A.) and earned a bachelor's degree and a master's degree.

On December 31, 2007, Mr. Limberea was hired as the director of accounting policy and research for the consumer finance group at American

---

[3]Decedent and Ms. Caraman concede that they: (1) failed to report other income of $800, interest income of $242, and qualified dividends of $1,592 for the taxable year 2008; (2) failed to report interest income of $19, qualified dividends of $602, ordinary dividends of $744, a State tax refund of $8,084, and unemployment compensation of $14,498 for the taxable year 2009; and (3) are not entitled to a deduction of $20,093 for unreimbursed employee business expenses as reported on Schedule A, Itemized Deductions, for the taxable year 2009. To the extent not discussed herein, other issues are computational and flow from our decision in this case.

International Group (AIG) in New York, New York. Mr. Limberea was hired as an at-will employee by David Fabricant, vice president and controller of AIG's consumer finance group. Both parties expected the employment relationship to continue indefinitely. Mr. Fabricant supervised Mr. Limberea during the period January 1 through July 2008.

AIG paid Mr. Limberea an annual base salary of $185,000 and a "sign-on" bonus of $40,000. The bonus was intended in part to offset moving expenses if Mr. Limberea decided to move his family from Virginia, where they were residing at the time, to New York.

Mr. Limberea elected not to move his family to New York. Instead, he worked in AIG's offices in New York and rented a hotel room on Staten Island where he stayed during the week. Mr. Limberea commuted back to his home in Virginia on the weekends.

AIG issued Mr. Limberea a corporate credit card. Consistent with AIG policy, Mr. Limberea was required to provide AIG with receipts for business expenses charged to the card and, if he paid any AIG business expenses from his own funds, he was obliged to request reimbursement from AIG and provide receipts or invoices to substantiate those expenditures. It was AIG's policy to

reimburse an employee for properly substantiated business expenses even after the employee left the firm's employment.

AIG reimbursed Mr. Limberea for membership dues that he paid to the American Institute of Certified Public Accountants (AICPA) during 2008. AIG also reimbursed Mr. Limberea for certain meals and entertainment expenses, foreign travel expenses, and cellular phone service fees incurred during 2008.

AIG did not require Mr. Limberea to maintain professional malpractice insurance or a home office as a condition of his employment.

AIG decided to close its consumer finance group in the latter half of 2008. Mr. Limberea's employment with AIG ended on November 6, 2008.

## II. Mr. Limberea's Employment During 2009

During 2009 Mr. Limberea was employed by Old Mutual Business Services, Inc., and he received a Form 1099-MISC, Miscellaneous Income, reporting income of $8,088 for 2009. Mr. Limberea recalled that this income related to shares of stock in a corporation he identified as "Delphi" that were transferred to his Ameritrade brokerage account during 2009.[4] He did not include the value of

---

[4]It appears that Mr. Limberea may have been referring to Delphi Corp., an international automobile parts manufacturer.

the shares in his and Ms. Caraman's taxable income for 2009, however, because he believed that the shares were worthless by the end of that year.

III. Joint Tax Returns for 2008 and 2009

Decedent and Ms. Caraman timely filed joint Federal income tax returns for 2008 and 2009. They attached a Schedule C to their tax return for 2008 for a business identified as LTG Risk International, LLC (LTG). The Schedule C identified Ms. Caraman as the proprietor of LTG, reported gross receipts of $600, and claimed a deduction of $102,567 for various expenses listed below:

| Expense | Amount |
| --- | --- |
| Supplies | $360 |
| Legal/professional | 650 |
| Depreciation and sec. 179 | 2,084 |
| Business use of home | 8,446 |
| Other | 5,954 |
| Utilities | 6,812 |
| Meals and entertainment | 2,260 |
| Repairs and maintenance | 5,750 |
| Insurance (other than health) | 6,583 |
| Commissions and fees | 14,375 |
| Advertising | 12,000 |
| Travel | 17,062 |
| Car and truck | 20,231 |
| Total | 102,567 |

The $8,446 listed above for business use of home is derived from two Forms 8829, Expenses for Business Use of Your Home, attached to the 2008 return. Both Forms 8829 listed Ms. Caraman as proprietor and indicated that the home was used for "Consulting, financial" work. One Form 8829 related to decedent and Ms. Caraman's home in Virginia. The record does not reflect the location of the property that was the subject of the second Form 8829 (second property). The Forms 8829 indicated that 33% of the Virginia home and 47% of the second property were used regularly and exclusively for business purposes.

## IV. Tax Return Preparation

Mr. Limberea used TurboTax, a software program, to prepare the joint returns for 2008 and 2009. There is no evidence that decedent or Ms. Caraman consulted with a tax professional before signing their returns and submitting them to the Internal Revenue Service (IRS).

## V. Mr. Limberea's Testimony

Mr. Limberea's testimony at trial was evasive, vague, and inconsistent. Although he did not offer any evidence to substantiate the claim, Mr. Limberea believed that unidentified persons conspired to deny him reimbursement for valid business expenses that he incurred on behalf of AIG.

The record includes decedent and Ms. Caraman's monthly checking account statements for 2008, including handwritten notations attributing certain payments for phone, electric, trash disposal, an alarm system, insurance, and homeowners association fees to LTG. Other larger payments are identified as expenses related to foreign travel and C.P.A. insurance.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

As discussed in detail below, decedent and Ms. Caraman have not complied with the Code's substantiation requirements, nor have they maintained all required records. Therefore, the burden of proof as to any relevant factual issue does not shift to respondent under section 7491(a). See sec. 7491(a)(1) and (2); Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer must substantiate deductions by keeping

and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90.

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943). A deduction normally is not available for personal, living, or family expenses. Sec. 262(a).

The term "trade or business" includes performing services as an employee. Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970). However, an employee expense is not ordinary and necessary if the employee is entitled to reimbursement from his or her employer. See Podems v. Commissioner, 24 T.C. 21, 22-23 (1955); Noz v. Commissioner, T.C. Memo. 2012-272.

When a taxpayer establishes that he or she paid or incurred a deductible expense, but fails to establish the amount of the deduction, the Court normally may estimate the amount allowable as a deduction. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). There must be sufficient evidence in the record, however, to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Section 274(d) prescribes strict substantiation requirements for deductions for expenses related to travel (including meals and lodging), entertainment, gifts, and with respect to "listed property". Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). As relevant here, the term "listed property" includes passenger automobiles. Sec. 280F(d)(4)(A)(i).[5]

---

[5]To satisfy the requirements of sec. 274(d), a taxpayer generally must maintain records and documentary evidence which, in combination, are sufficient to establish the amount, date and time, and business purpose of each separate expenditure or business use of listed property. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). The Court may not use the rule in Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), to estimate expenses subject to sec. 274(d). Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a),

(continued...)

## I. Schedule C Expenses--2008

### A. Travel Expenses and Legal and Professional Services

Mr. Limberea testified that unspecified portions of the deductions for travel expenses and legal and professional services claimed on Schedule C were related to his employment with AIG. Consequently, he was required to report those expenses on Schedule A as unreimbursed employee expenses, rather than on Schedule C. Further, to be eligible to deduct unreimbursed employee business expenses, he was obliged to show that he was not entitled to reimbursement from AIG. See Orvis v. Commissioner, 788 F.2d 1406, 1408 (9th Cir. 1986), aff'g T.C. Memo. 1984-533; Lucas v. Commissioner, 79 T.C. 1, 7 (1982); Solomon v. Commissioner, T.C. Memo. 2011-91.

In any event, Mr. Limberea failed to produce any documentation, such as bills, receipts, or invoices, to substantiate that he paid any expenses for travel and legal and professional services associated with his work for AIG during 2008 or that AIG denied reimbursement for any such expenses.[6] See Podems v. Commissioner, 24 T.C. at 22-23. The Court is not bound to accept a taxpayer's

---

[5](...continued)
Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

[6]The record reflects that AIG reimbursed Mr. Limberea for his AICPA membership dues.

self-serving, unverified, and undocumented testimony.  <u>Shea v. Commissioner</u>, 112 T.C. 183, 189 (1999).

The record likewise is devoid of any documentation, such as bills, receipts, or invoices, to substantiate that either Ms. Caraman or Mr. Limberea paid or incurred any expenses for travel and legal and professional services associated with work for LTG during 2008.

Consistent with the foregoing, we sustain respondent's determination disallowing deductions claimed for travel expenses and legal and professional services.

B. <u>Supplies, Repairs and Maintenance, Commissions and Fees, Advertising, and Other Expenses</u>

Decedent and Ms. Caraman claimed deductions for supplies, repairs and maintenance, commissions and fees, advertising, and other expenses, consisting of printing costs, books, magazines, and postage.  They did not present any receipts, canceled checks, or similar records to substantiate these expenses, and there is no evidence in the record that would allow us to estimate the amounts of any allowable deductions.  <u>See</u> <u>Vanicek v. Commissioner</u>, 85 T.C. at 743.  Consequently, respondent's determination disallowing these deductions is sustained.

C. Insurance

Decedent and Ms. Caraman claimed a deduction for professional malpractice insurance. Mr. Limberea was not required to maintain professional malpractice insurance as a condition of his employment with AIG. Moreover, there is no evidence, such as receipts, canceled checks, or insurance records substantiating the expense. Accordingly, respondents' determination disallowing the deduction for insurance expenses is sustained.

D. Meals and Entertainment and Vehicle Expenses

Decedent and Ms. Caraman claimed deductions for meals and entertainment expenses and vehicle expenses. The record reflects that AIG reimbursed Mr. Limberea for certain meals and entertainment expenses and travel expenses. There is no documentation, such as bills, receipts, or mileage logs, showing the amount, time and place, and business purpose for any additional expenses for meals and entertainment or vehicle expenses. See sec. 274(d).[7] Consequently, respondent's

---

[7]Inasmuch as Mr. Limberea's employment with AIG was indefinite, as opposed to temporary, no deduction is allowed for the cost of Mr. Limberea's weekend trips from New York to Virginia during 2008. In short, those trips did not amount to "traveling expenses * * * while away from home" within the meaning of sec. 162(a)(2). See Tucker v. Commissioner, 55 T.C. 783, 786 (1971); Kroll v. Commissioner, 49 T.C. 557, 562 (1968).

determination disallowing the deductions claimed for meals and entertainment and vehicle expenses is sustained.

E.  Business Use of Home

Decedent and Ms. Caraman claimed a deduction for two home office spaces during 2008.  Specifically, they claimed that they used 400 square feet of their 1,200-square-foot home in Virginia as an office and 900 square feet of an unidentified second property as an office.

Section 280A(a) sets forth the general rule that an individual taxpayer or an S corporation is not permitted to claim a deduction with respect to the use of a dwelling unit which is used during the taxable year by the taxpayer as a residence. Section 280A(c) prescribes an exception to the general rule of subsection (a) as follows:

> SEC. 280A(c).  Exceptions for Certain Business or Rental Use; Limitations on Deductions for Such Use.--
>
> > (1) Certain business use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis--
> >
> > > (A) as the principal place of business for any trade or business of the taxpayer,
> > >
> > > (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with

the taxpayer in the normal course of his trade or
business, or

 (C) in the case of a separate structure which is not
attached to the dwelling unit, in connection with the
taxpayer's trade or business.

In the case of an employee, the proceeding sentence shall apply
only if the exclusive use referred to in the preceding sentence is
for the convenience of his employer. For purposes of
subparagraph (A), the term "principal place of business"
includes a place of business which is used by the taxpayer for
the administrative or management activities of any trade or
business of the taxpayer if there is no other fixed location of
such trade or business where the taxpayer conducts substantial
administrative or management activities of such trade or
business.

In sum, section 280A(c)(1) permits a deduction for expenses that are allocable to a portion of a dwelling unit which is exclusively used on a regular basis as the principal place of business for any trade or business of the taxpayer. Lofstrom v. Commissioner, 125 T.C. 271, 277-278 (2005). If the taxpayer is an employee, however, a deduction is available only if, inter alia, the home office is maintained for the convenience of the employer. Hamacher v. Commissioner, 94 T.C. 348, 353-354 (1990). An employee cannot maintain a home office purely as "a matter of personal convenience, comfort, or economy." Sharon v. Commissioner, 66 T.C. 515, 523 (1976), aff'd, 591 F.2d 1273 (9th Cir. 1978).

There is no evidence that any space in either the Virginia home or the second property was used exclusively and on a regular basis as LTG's principal place of business. Nor has there been any showing that Mr. Limberea used a specific space at either property to perform his duties for, or as a condition of his employment with, AIG. See Frankel v. Commissioner, 82 T.C. 318, 325-326 (1984). On the record presented, respondent's determination is sustained, and the deductions claimed for business use of home are disallowed.

F. Depreciation

Decedent and Ms. Caraman claimed a deduction for depreciation. Section 167(a) allows a depreciation deduction for exhaustion, wear and tear, and obsolescence of property if the taxpayer uses such property in a trade or business or other income-producing activity. Sec. 1.167(a)-1(a), Income Tax Regs. Section 168 provides the general rule that the depreciation deduction authorized by section 167(a) for any tangible property shall be determined by using (1) the applicable depreciation method, (2) the applicable recovery period, and (3) the applicable convention.

There is no evidence in the record of an expenditure in respect of a depreciable asset or the method used to calculate the depreciation deduction.

Therefore, respondent's determination is sustained, and the depreciation deduction is disallowed.

G. Utilities

Decedent and Ms. Caraman claimed a deduction for utility expenses. The record includes the couple's monthly checking account statements for 2008, including handwritten notations attributing certain payments for phone, electric, trash disposal, and homeowners association fees to LTG. There has been no showing that the utility bills are anything other than nondeductible personal expenses. Sec. 262(a). Accordingly, respondent's determination disallowing the deduction claimed for utility expenses is sustained.

II. Miscellaneous Income--2009

Decedent and Ms. Caraman failed to include in taxable income $8,088 reported to respondent on Form 1099-MISC for 2009. Mr. Limberea recalled that an undisclosed number of shares of stock in a corporation he referred to as "Delphi" were transferred to his Ameritrade brokerage account, but he did not include the value of the shares in income because he believed the shares were worthless by the end of 2009.

Under the circumstances, we consider Mr. Limberea to have conceded that he received income in the amount set forth in the Form 1099-MISC, see sec. 61(a),

while asserting that he realized a capital loss for the taxable year 2009 under section 165(g).[8]  However, he failed to offer any evidence showing that the shares of stock transferred to his brokerage account were indeed worthless at the end of 2009.  See, e.g., Morton v. Commissioner, 38 B.T.A. 1270, 1278-1279 (1938) (the taxpayer must show an absence of both potential and liquid value by yearend in order to sustain a worthless stock loss), aff'd, 112 F.2d 320 (7th Cir. 1940).  Respondent's determination that decedent and Ms. Caraman failed to report income of $8,088 for the taxable year 2009 is sustained, and we hold that they are not entitled to a worthless stock loss for 2009.

## III.  Section 6662(a) Accuracy-Related Penalties

Section 6662(a) and (b)(1) imposes a penalty equal to 20% of the amount of any underpayment attributable to negligence or disregard of rules or regulations.  The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations.  Sec. 6662(c).  Negligence also includes any failure to keep adequate books and records or to substantiate items

---

[8]Sec. 165(g)(1) provides the general rule that if any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall be treated as a loss from the sale or exchange of a capital asset on the last day of the taxable year.

properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.; see Olive v. Commissioner, 139 T.C. 19, 43 (2012).

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment.  Sec. 1.6664-4(a), Income Tax Regs.  The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.

The Commissioner bears the initial burden of production.  Sec. 7491(c).  If the Commissioner satisfies his burden, the taxpayer then bears the ultimate burden of persuasion.  Higbee v. Commissioner, 116 T.C. at 446-447.  Respondent has discharged his burden of production under section 7491(c) by showing that decedent and Ms. Caraman failed to keep adequate books and records, and they failed to properly substantiate their claimed expenses.  See sec. 1.6662-3(b)(1), Income Tax Regs.

Mr. Limberea prepared the tax returns in question using a software program, and neither he nor Ms. Caraman consulted with a tax professional before submitting the returns to the IRS.  The record reflects that they failed to report

numerous items of income over a two-year period and they failed to maintain the books and records necessary to substantiate their claimed deductions. Considering all the circumstances, including the fact that Mr. Limberea was a C.P.A., we are unable to conclude that either he or Ms. Caraman acted with reasonable cause and in good faith in respect of the preparation and filing of their tax returns for the years in issue. As a result, we sustain the accuracy-related penalties that respondent determined under section 6662(a) for 2008 and 2009.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.