**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-25

UNITED STATES TAX COURT

JANET M. WEISS AND FRANCIS E. WEISS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20147-12S.                    Filed March 18, 2014.

Janet M. Weiss and Francis E. Weiss, pro sese.

Bryan Dotson and Bruce Martin Wilpon, for respondent.

SUMMARY OPINION

GUY, Special Trial Judge:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

---

[1]Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $14,252 in petitioners' Federal income tax for 2010 and an accuracy-related penalty of $2,850 pursuant to section 6662(a). Petitioners, husband and wife, filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioners resided in Texas.

After concessions,[2] the issues remaining for decision are whether petitioners (1) may exclude from gross income Mr. Weiss' military retired pay and (2) are entitled to deductions for unreimbursed employee business expenses reported on Schedule A, Itemized Deductions.

---

[1](...continued)
Code (Code), as amended and in effect for 2010, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

[2]The parties agree that petitioners are entitled to itemized deductions of $9,506 and $6,190 for charitable contributions and gambling losses, respectively. Respondent concedes that petitioners are entitled to an itemized deduction of $1,169 for taxes, petitioners' itemized deductions exceed the standard deduction, and petitioners are not liable for the accuracy-related penalty under sec. 6662(a). Other concessions are strictly computational and will be resolved in Rule 155 computations to be submitted in accordance with this opinion.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

Mr. Weiss has four children from a prior marriage and three children with Mrs. Weiss. Petitioners resided in Denver, Colorado, between January 1 and August 10, 2010, and in San Antonio, Texas, through the remainder of that year.

## I. Mr. Weiss

### A. Military Service

Mr. Weiss joined the U.S. Army (Army) in 1969 as a cadet at the U.S. Military Academy at West Point, New York. He served 21 years in active duty and 5 years in the Army Reserve, with breaks in service of varying lengths in 1973 and 1978.

During his military service Mr. Weiss was diagnosed with six disabilities related to various health issues, including knee injuries in 1979 and 1996, a serious back problem in 1980, and depression in 1993. Although Army medical personnel counseled Mr. Weiss to retire because of a medical disability in 1994, he declined to do so because he wanted to retire with the enhanced benefits that would come with 20 years of active service.

B. <u>Retirement From Military Service</u>

Mr. Weiss retired from the Army on August 1, 1999, and he testified that the Department of Veterans Affairs (VA) determined that he was 60% disabled at the time of his retirement. Shortly after his retirement, the Defense Finance and Accounting Service (DFAS) sent a letter to Mr. Weiss explaining that it had computed his retired pay pursuant to a formula using his active duty pay rate of $6,694 multiplied by a percentage rate derived in part from his 21 years of active duty service. There is no indication that DFAS considered Mr. Weiss' disability rating in computing his retired pay.

1. <u>Retired Pay</u>

The record includes a copy of Mr. Weiss' DFAS account statement for December 2010 which shows that his gross retired pay for 2010 was $56,520 and that the following (nontaxable) amounts were withheld from his monthly payments: $73 for "VA WAIVER", $306 for "SBP COSTS", and $779 for "FORMER SPOUSE DED". The "VA WAIVER" amount represents the portion of Mr. Weiss' retired pay that was waived in connection with his election to receive VA disability compensation.[3] "SBP COSTS" refers to the reduction in Mr.

---

[3]Before 2004 a military retiree was not permitted to receive military retired pay and VA disability compensation concurrently. <u>See</u> 10 U.S.C. sec. 1413

(continued...)

Weiss' retired pay to account for his election to provide survivor benefits for Mrs.

Weiss and the couple's children.[4]  Finally, "FORMER SPOUSE DED" represents

amounts that DFAS withheld from Mr. Weiss' retired pay and remitted to his

former spouse consistent with the terms of their divorce agreement.

## 2.  Disability Compensation

The record includes letters from the VA to Mr. Weiss dated January 14,

2006, January 26, 2010, December 2, 2011, and October 6, 2012, confirming that

he was receiving service-connected disability compensation during those years.

---

[3](...continued)
(2000 & Supp. 2001-2003); see also 38 U.S.C. secs. 5304, 5305 (2000 & Supp. 2001-2006).  In this regard, a retiree was required to waive retired pay in an amount equal to any VA disability compensation received (VA waiver).  See S. Rept. No. 108-265, at 39 (2004).  In the National Defense Authorization Act for Fiscal Year 2004, Pub. L. No. 108-136, sec. 641(a)-(c), 117 Stat. at 1511-1514, Congress repealed 10 U.S.C. sec. 1413 and amended 10 U.S.C. sec. 1414 to eliminate (over a 10-year period beginning January 1, 2004) the concurrent receipt restriction outlined above as applied to military retirees with service-connected disabilities rated by the VA at not less than 50%.  See 10 U.S.C. sec. 1414(c) (2000 & Supp. 2001-2004).  In accordance with 10 U.S.C. sec. 1414(c)(7), 93.95% of the $15,198 that Mr. Weiss received in VA disability compensation during 2010 (approximately $1,190 per month) was excluded in computing the amount of his VA waiver.

[4]Sec. 122(a) provides the general rule that, in the case of a member of the uniformed services of the United States, gross income does not include the amount of any reduction in retired pay pursuant to the provisions of 10 U.S.C. ch. 73 (Annuities Based on Retired or Retainer Pay) .

His disability ratings from 2006 to 2012 ranged from 50% to 60%. The record does not reflect the date that Mr. Weiss first applied for VA disability benefits.

During 2010 Mr. Weiss received disability compensation of $15,198 from the VA. The parties agree that Mr. Weiss' disability compensation is excludable from petitioners' gross income pursuant to section 104(a)(4).

## II. Mrs. Weiss' Employment

Mrs. Weiss works as a destination manager assisting clients by arranging hotel accommodations, transportation, and entertainment for large groups attending business conventions and similar events. She was employed in this capacity by USA Hosts in Las Vegas, Nevada, during 2009.

Although the parties stipulated that Mrs. Weiss was unemployed from January to September 2010, Mrs. Weiss testified that she worked as an independent contractor from March to July 2010 for a company called Circa Arizona. Mrs. Weiss further testified that she worked out of an office in her home in Denver making telephone calls to potential clients to "solicit visits for Phoenix, Arizona, and San Antonio, Texas." Petitioners testified that they also used the office space to conduct personal business.

Mrs. Weiss testified that she took two business trips from Denver during June and August 2010. On one trip she drove round trip from Denver to Houston

and Dallas, and on the other she drove round trip from Denver to San Antonio. She testified that on both trips she met with various clients to preserve business relationships. She did not maintain a contemporaneous mileage log for the two trips.

In mid-August 2010 petitioners moved from Denver to San Antonio, and Mrs. Weiss began working for Kenneth R. Thornton Fun Factory Events (Fun Factory), providing destination management services for clients traveling to Houston, Austin, and San Antonio.

Mrs. Weiss testified that she purchased clothing to wear only for business meetings. She conceded, however, that the clothing could be used for personal, everyday wear.

During fall 2010 Mrs. Weiss took potential clients to dinner in the San Antonio area. She had worked with these clients in the past and hoped that they would become Fun Factory clients in the future. Mrs. Weiss testified that Fun Factory was "very tight on reimbursements" and would not reimburse employee expenses without preapproval 30 days in advance. The record does not include a copy of Fun Factory's or Circa Arizona's employee reimbursement policy.

III. <u>Petitioners' 2010 Tax Return</u>

A. <u>Wages</u>

Petitioners timely filed a joint Federal income tax return for 2010 reporting total wages of $91,393, comprising $69,736 that Mr. Weiss earned working for the U.S. Census Bureau and $20,749 and $8 that Mrs. Weiss earned working for Fun Factory and USA Hosts Ltd., respectively. Mrs. Weiss also reported that she received nonemployee compensation of $900 from Circa Arizona.

B. <u>Mr. Weiss' Retirement Income</u>

DFAS issued to Mr. Weiss a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reporting that he received taxable retired pay of $42,467 during 2010. Although petitioners reported $42,467 of "Pensions and annuities" income on lines 16a and 16b of their return, they fully offset that amount by subtracting $42,467 from income on line 21, Other income.

C. <u>Unreimbursed Employee Business Expenses</u>

Petitioners claimed itemized deductions on Schedule A including a deduction of $8,491 for unreimbursed employee business expenses. Petitioners attached to their return Form 2106, Employee Business Expenses, listing vehicle

expenses of $3,075,[5] parking fees and tolls of $520, travel expenses while away from home of $2,596, other business expenses of $1,100, and meals and entertainment expenditures of $1,200 (after the application of the 50% limitation prescribed by section 274(n)).

IV.  Notice of Deficiency

Respondent issued a notice of deficiency to petitioners disallowing (1) an exclusion from gross income of $36,277 related to Mr. Weiss' retired pay and (2) the deduction petitioners claimed on Schedule A for unreimbursed employee business expenses.  Petitioners raised no objection at trial when respondent clarified that the correct amount of the disallowed exclusion from gross income should have been $42,467--the entire amount that petitioners reported on line 21 of their return.

---

[5]Petitioners used the standard mileage rate to compute the amount of the deduction they claimed for vehicle expenses.  The Commissioner generally updates the optional standard mileage rates annually.  See sec. 1.274-5(j)(2), Income Tax Regs.  The standard mileage rate of 50 cents per mile for 2010 is set forth in Rev. Proc. 2009-54, sec. 2.01, 2009-51 I.R.B. 930, 930.

V.    Petitioners' Records

A.  Petitioners' Revised Form 2106

In preparation for trial petitioners prepared a revised Form 2106 listing vehicle expenses of $1,980, meals and entertainment expenses of $1,245, and unspecified miscellaneous expenses of $5,265.

B.  Vehicle Expenses

Among petitioners' tax records for 2010 is a handwritten note which states: "110 day[s] × 36 [miles] × [$ 0].50 = $1,980".  The note apparently relates to Mrs. Weiss' daily commute to Fun Factory's office in San Antonio during the latter half of 2010.

Petitioners created a mileage log and presented it to respondent shortly before trial.  The mileage log states that Mrs. Weiss drove a total of 3,960 miles on round trips from Denver to Houston and Dallas and from Denver to San Antonio during June and August 2010, respectively.[6]

C.  Meals and Entertainment and Other Expenses

Mrs. Weiss proffered copies of credit card statements and individual receipts from various restaurants, department stores, and parking and toll charges

_____

[6]It appears to be a coincidence that Mrs. Weiss' two business trips from Denver and the miles she apparently drove in San Antonio during the second half of the year both totaled 3,960 miles.

in an effort to substantiate unreimbursed expenses for meals and entertainment, clothing, and transportation. Most of the credit card statements were illegible, and many of the receipts lacked any information related to the business purpose underlying the expenditure. A few of the receipts included a handwritten notation such as "client" or "client gift".

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).[7] On the other hand, respondent bears the burden of proof in respect of increases in the deficiency, see Rule 142(a)(1), and specifically the deficiency amount attributable to the increase in the amount disallowed as an exclusion from income from $36,277 to $42,467.[8]

---

[7]Petitioners bear the burden of proving that they were entitled to the deduction for unreimbursed employee business expenses claimed on Schedule A. As discussed in detail below, however, they did not comply with the Code's substantiation requirements and have not maintained all required records. Therefore, the burden of proof as to any relevant factual issue does not shift to respondent under sec. 7491(a) in respect of that matter. See sec. 7491(a)(1) and (2); Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).

[8]Because we decide on the preponderance of the evidence that no amount of Mr. Weiss' retired pay may be excluded from income, the allocation of the burden
(continued...)

I. <u>Mr. Weiss' Retired Pay</u>

Section 61(a) provides that gross income means "all income from whatever source derived". Pensions and retirement allowances constitute gross income unless excluded by law. Sec. 61(a)(11); sec. 1.61-11(a), Income Tax Regs. Military retired pay is pension income within the meaning of section 61(a)(11). <u>Wheeler v. Commissioner</u>, 127 T.C. 200, 205 n.11 (2006), <u>aff'd</u>, 521 F.3d 1289 (10th Cir. 2008).

Section 104(a)(4) provides an exclusion from gross income for amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country. As previously mentioned, respondent does not dispute that Mr. Weiss is entitled to exclude from gross income the disability compensation that he received from the VA during 2010. Respondent determined, however, that Mr. Weiss was not entitled to exclude from gross income the retired pay that he received from DFAS because those payments were not made for personal injuries or sickness.

As a general rule, provisions granting special tax exemptions are strictly construed. <u>Helvering v. Nw. Steel Rolling Mills, Inc.</u>, 311 U.S. 46, 49 (1940). In

[8](...continued)
of proof is immaterial. <u>See</u> <u>Knudsen v. Commissioner</u>, 131 T.C. 185, 189 (2008).

this case, we consider whether the payments Mr. Weiss received from DFAS qualify for exclusion under section 104(a)(4) or some other provision of law. See Scarce v. Commissioner, 17 T.C. 830, 833 (1951). Military retired pay for length of service normally is not exempt from taxation. Id.; Holt v. Commissioner, T.C. Memo. 1999-348.

Mr. Weiss relies on section 1.122-1, Income Tax Regs., and specifically Example 4 of paragraph (d) of the regulation, to support his contention that his retired pay is excludable from gross income. We note that the retiree in Example 4 was receiving "disability retirement pay under section 1401 of title 10". Mr. Weiss contends that "if you are disabled on the same day you retired, it means that you were disabled in service. And that is my justification for the use of the Treasury regulation 1.122-1."

Although Mr. Weiss testified that the VA determined that he was 60% disabled at the time he retired in August 1999, there is no documentation showing the date that he first applied for disability compensation. Against that backdrop, we also note that DFAS made no mention of a disability in its letter to Mr. Weiss explaining how it computed his retired pay. To the contrary, DFAS computed his retired pay solely on the basis of his active duty pay rate and years of active service. Although there is no dispute that Mr. Weiss suffered from service-related

disabilities, there is nothing in the record to show that he was incapable of remaining in active duty or that he retired as a direct result of his disabilities. Indeed, he continued to work for the Census Bureau during 2010.

The Court has previously considered arguments similar to Mr. Weiss' and has held that military retired pay is included in gross income regardless of a VA disability determination. See Lambert v. Commissioner, 49 T.C. 57 (1967); Sidoran v. Commissioner, T.C. Memo. 1979-56, aff'd, 640 F.2d 231 (9th Cir. 1981). In these cases, we held that a VA disability determination does not establish that a portion of a pension is received for injuries sustained during active service. Moreover, Mr. Weiss is receiving disability compensation from the VA that the parties agree is excludable from petitioners' gross income. See Holt v. Commissioner, T.C. Memo. 1999-348.

Under the circumstances, Mr. Weiss' reliance on section 1.122-1, Income Tax Regs., is misplaced. As is relevant here, the regulation provides rules for the order in which exclusions from disability retired pay are taken into account under sections 122(a) and 104(a). Contrary to Mr. Weiss' understanding, neither the primary text of the regulation nor Example 4 (which speaks to an individual who, unlike Mr. Weiss, received disability retired pay under 10 U.S.C. sec. 1401

(2000)) provides authority for excluding his retired pay from gross income under the circumstances presented in this case.

The regulation aside, Mr. Weiss also cites a "No Change" letter that he received following an IRS examination of petitioners' joint tax return for 2009 as further evidence confirming that the position he asserts in this case is correct. We understand Mr. Weiss to contend that respondent is estopped to take a contrary position in this case. We disagree. It is well settled that the acceptance or acquiescence in returns filed by a taxpayer in previous years creates no estoppel against the Commissioner, nor does the overlooking of an error in a return upon audit create any such estoppel. See Dixon v. United States, 381 U.S. 68, 72-73 (1965); Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 183-184 (1957); McGuire v. Commissioner, 77 T.C. 765, 779-780 (1981). In short, neither the Commissioner nor the Court is constrained in this case by the "No Change" letter issued in respect of petitioners' tax return for 2009. See, e.g., Gould v. Commissioner, 139 T.C. 418, 445 (2012), aff'd, ___ Fed. Appx. ___ , 2014 WL 279863 (4th Cir. Jan. 27, 2014).

Consistent with the foregoing, we agree with respondent that petitioners are not entitled to exclude $42,467 from their gross income for 2010.

## II.  Unreimbursed Employee Business Expenses

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir. 1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90.

When a taxpayer establishes that he or she paid or incurred a deductible expense, but fails to establish the amount of the deduction, the Court normally may estimate the amount allowable as a deduction.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  There must be sufficient evidence in the record, however, to permit

the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. A deduction normally is not allowed, however, for personal, living, or family expenses. Sec. 262(a). Whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943). The term "trade or business" includes performing services as an employee. Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970). However, an employee business expense is not ordinary and necessary if the employee is entitled to reimbursement from his or her employer. See Podems v. Commissioner, 24 T.C. 21, 22-23 (1955); Noz v. Commissioner, T.C. Memo. 2012-272.

Section 274(d) prescribes more stringent substantiation requirements to be met before a taxpayer may deduct certain categories of expenses, including travel expenses, meals and entertainment expenditures, and expenses related to the use of listed property as defined in section 280F(d)(4)(A). See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). As relevant here, the term "listed property" includes, inter alia, passenger automobiles. Sec.

280F(d)(4)(A)(i).  To satisfy the requirements of section 274(d), a taxpayer generally must maintain adequate records or produce sufficient evidence corroborating his or her own statement, which, in combination, are sufficient to establish the amount, date and time, and business purpose for each expenditure for travel away from home or expenditure or business use of listed property.  Sec. 1.274-5T(b)(2), (6), (c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46014, 46016-46017 (Nov. 6, 1985).

Section 1.274-5T(c)(2), Temporary Income Tax Regs., supra, provides in relevant part that "adequate records" generally consist of an account book, a diary, a log, a statement of expense, trip sheets, or a similar record made at or near the time of the expenditure or use, along with supporting documentary evidence. Section 1.274-5(j)(2), Income Tax Regs., provides that the strict substantiation requirements of section 274(d) for vehicle expenses must be met even where the optional standard mileage rate is used.  Moreover, the Court may not use the rule established in Cohan v. Commissioner, 39 F.2d at 543-544, to estimate expenses covered by section 274(d).  Sanford v. Commissioner, 50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

A.  <u>Lack of Evidence of Employer Reimbursement Policy</u>

Although the record indicates that Mrs. Weiss was employed by Circa Arizona and Fun Factory during 2010, she failed to produce direct evidence related to either company's employee reimbursement policy.  She testified only that Fun Factory was very "tight" with reimbursements.  Under the circumstances, we are unable to determine that the expenses in dispute constitute ordinary and necessary business expenses within the meaning of section 162.  <u>See</u> <u>Podems v. Commissioner</u>, 24 T.C. at 22-23; <u>Rehman v. Commissioner</u>, T.C. Memo. 2013-71, at *18.[9]

B.  <u>Lack of Substantiation</u>

    1.  <u>Vehicle Expenses</u>

The record includes a mileage log related to trips that Mrs. Weiss took from Denver to various cities in Texas during June and August 2010 and a handwritten note which appears to relate to her daily commute to Fun Factory during the latter half of 2010.  Neither record was created contemporaneously in 2010.

---

[9]Although our holding on this point would be sufficient to sustain respondent's determination disallowing the deduction petitioners claimed for unreimbursed employee business expenses, we also conclude that petitioners failed to adequately substantiate the expenses underlying the deduction.

As a general rule, the costs of commuting between a taxpayer's residence and place of business or employment are nondeductible personal expenses.  See Fausner v. Commissioner, 413 U.S. 838, 839 (1973); Commissioner v. Flowers, 326 U.S. 465, 473-474 (1946); sec. 1.262-1(b)(5), Income Tax Regs.  On this record, we conclude that the mileage listed in the handwritten note represents nondeductible personal commuting expenses.  See, e.g., Heuer v. Commissioner, 32 T.C. 947, 951-953 (1959), aff'd, 283 F.2d 865 (5th Cir. 1960).

Although the mileage log provides detailed information regarding Mrs. Weiss' two round trips from Denver to Texas, the log was not created contemporaneously but rather was created shortly before trial in 2013.  Consequently, it does not qualify as an adequate record within the meaning of section 1.274-5T(c)(2), Temporary Income Tax Regs., supra.  Moreover, Mrs. Weiss failed to provide other reliable evidence corroborating her own statement sufficient to establish the amount, date and time, and business purpose for each expenditure for travel away from home or business use of listed property.  See sec. 1.274-5T(b)(2), (6), (c)(1), Temporary Income Tax Regs., supra.  In sum, Mrs. Weiss failed to show that the vehicle expenses constitute ordinary and necessary business expenses within the meaning of section 162.  Consistent with the

foregoing, we sustain respondent's determination disallowing the deduction petitioners' claimed for vehicle expenses.

## 2. Meals and Entertainment Expenses

Petitioners claimed a deduction of $1,245 for meals and entertainment expenses. Meals and entertainment expenses are also subject to the strict substantiation requirements of section 274(d). Petitioners provided copies of several receipts from restaurants purportedly related to Mrs. Weiss' business meetings with potential clients. Many of the receipts were illegible, only three receipts listed client names, and none detailed a business purpose. In addition, some of the meetings were with personal business contacts and not with clients of Fun Factory. On the record presented, petitioners have failed to meet the strict substantiation requirements of section 274(d) for meals and entertainment expenses. Respondent's determination disallowing the deduction petitioners claimed in respect of these expenses is sustained.

## 3. Miscellaneous Expenses

Petitioners listed miscellaneous employee business expenses of $5,265 on the revised Form 2106. Mrs. Weiss provided copies of receipts from department stores for clothing that she purchased to wear to business meetings. The cost of clothing that is "required or essential in an employment, and which * * * [is] not

suitable for general or personal wear and [is] not so worn" is a deductible expense. Yeomans v. Commissioner, 30 T.C. 757, 767-769 (1958); see Wasik v. Commissioner, T.C. Memo. 2007-148; Beckey v. Commissioner, T.C. Memo. 1994-514. However, Mrs. Weiss was not required to wear a uniform to work, and she admitted at trial that the clothes that she purchased and wore for business meetings were also suitable for general or personal wear. Therefore, petitioners are not entitled to a deduction for these items.

Petitioners also provided copies of receipts marked "client" or "client gifts", invoices for tolls and valet parking, and credit card statements with handwritten notes. However, these records were mostly illegible, and they did not indicate the client name or business purpose of the purported business expense. In the absence of proper substantiation, respondent's determination disallowing the deduction petitioners claimed for miscellaneous employee business expenses is sustained.

III. Business Use of Home

A taxpayer generally is not entitled to deduct any expenses related to a dwelling unit used as a residence during the taxable year. Sec. 280A(a). Expenses attributable to a home office are excepted from this general rule, however, if the expenses are allocable to a portion of the dwelling unit which is exclusively used on a regular basis as the principal place of business for the taxpayer's trade or

business.  Sec. 280A(c)(1); <u>See</u> <u>Lofstrom v. Commissioner</u>, 125 T.C. 271, 277-278 (2005).

Mrs. Weiss testified that she used a bedroom in petitioners' home to perform work for Circa Arizona.  Petitioners both testified, however, that they used the room for personal matters.  Consequently, petitioners are not entitled to a deduction for the business use of their home.  <u>See</u> <u>Lofstrom v. Commissioner</u>, 125 T.C. at 277-278.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.