125 T.C. No. 13

UNITED STATES TAX COURT

DENNIS E. AND PAULA W. LOFSTROM, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4667-03.             Filed November 22, 2005.

Ps are Mr. Lofstrom (H) and Paula Lofstrom (W-2).
H was previously married to Dorothy Lofstrom (W-1).  In
satisfaction of his alimony obligations to W-1, H
transferred his $29,000 interest in a contract for deed
to W-1, along with $4,000 in cash.  Ps deducted as
alimony the value of the contract for deed.  In
addition, Ps claimed to operate the first floor of
their residence as a bed and breakfast (B&B) and
deducted related expenses.  H, a retired doctor, also
claimed to be engaged in the business of writing for
profit and Ps deducted expenses attributable to H's
writing activities.

1.  <u>Held</u>:  A contract for deed is a third-party
debt instrument under sec. 1.71-1T(b), Q&A-5, Temporary
Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984).
Ps may not deduct as alimony the value of a contract
for deed transferred to W-1 because it does not
constitute a cash payment.  <u>Id.</u>; see secs. 61(a)(8),
71(a), 215(a) and (b).

2.  Held, further, Ps may not deduct expenses for a hotel or like establishment because they used the B&B for personal purposes for an indeterminate amount of time, and they failed to substantiate the expenses. Sec. 280A (c)(1), (d)(1), (f)(1)(B), (g).

3.  Held, further, Ps may not deduct writing activity expenses where they failed to show that H was engaged in the activity of writing for profit. Secs. 162, 183; sec. 1.183-2(a), Income Tax Regs.

Steven Z. Kaplan, for petitioners.

Melissa J. Hedtke, for respondent.

OPINION

KROUPA, Judge:  Respondent determined a $10,552 deficiency in petitioners' Federal income tax for 1997 and a $2,198 deficiency for 1998.  After concessions,[1] the issues for decision are:

1.  Whether petitioners may claim an alimony deduction for $29,000 in 1997 for the transfer of a contract for deed.  Because we find the contract for deed does not constitute cash or a cash equivalent, we hold that they may not.

---

[1]Petitioners conceded several deductions, including auto expenses, legal expenses for Mr. Lofstrom's divorce, real estate appraisal expenses, closing costs, flood insurance recovery costs, tax return preparation fees, land abstract costs, utilities, travel expenses, and other expenses claimed on Schedule F, Profit or Loss From Farming, and Schedule C, Profit or Loss From Business.

2.  Whether petitioners may deduct $19,158 in 1997 for expenses incurred in the operation of a bed and breakfast (B&B). Because we find they used the B&B for personal purposes for an indeterminate period and failed to substantiate expenses, we hold that they may not deduct these expenses.

3.  Whether petitioners may deduct $1,664 in 1997 and $8,413 in 1998 for expenses related to Mr. Lofstrom's writing activities.  Because we find they failed to show that Mr. Lofstrom engaged in the activity of writing for profit, we hold that they may not deduct these expenses.

<u>Background</u>

The parties submitted the case fully stipulated under Rule 122.[2]  The stipulation of facts and accompanying exhibits are incorporated by this reference and are so found.  Petitioners resided in Overland Park, Kansas, at the time they filed this petition.

Trial was first scheduled for June 14, 2004, but was continued because petitioners were in Africa.  Trial was then rescheduled for June 6, 2005.  Although petitioners were represented by counsel, they were not present to testify or be cross-examined.  We admitted several documents at trial,

---

[2]All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

including petitioners' answers to interrogatories, over respondent's objections, but warned petitioners that we would accord little weight to the documents.  To hold otherwise would prejudice respondent because he did not have the opportunity to cross-examine petitioners regarding the authenticity of the documents or the veracity of petitioners' answers to interrogatories.  We stand by that ruling.  The factual background is therefore based on the stipulation of facts and exhibits submitted to the Court.

Petitioner Dr. Dennis Lofstrom (Mr. Lofstrom) leads a very active life.  For most of his life, Mr. Lofstrom lived and worked in Minnesota, where he raised a family of 11 children with his wife, Dorothy Lofstrom (Dorothy).  Mr. Lofstrom later divorced Dorothy and retired from his full-time medical practice.  Mr. Lofstrom embarked at age 70 in 1995 upon a medical missionary trip to Antarctica with his second wife, Paula Lofstrom (Paula). Petitioners embarked upon another medical missionary trip in 2002 to serve at a hospital in Tanzania, Africa, for 5 years.

This case concerns three varieties of deductions that petitioners claimed in 1997 and 1998.  The first relates to alimony.

Alimony Deduction

Mr. Lofstrom was ordered to pay Dorothy $1,500 per month in alimony (or support maintenance payments) pursuant to their

divorce decree. Mr. Lofstrom stopped making payments sometime in 1995 and a year later asked a Minnesota county court to terminate his alimony obligations because his salary had been substantially diminished after retirement. The State court instead found Mr. Lofstrom in arrears to Dorothy for the time that he failed to pay alimony and reduced his arrearage to a judgment for $18,000. The State court did grant Mr. Lofstrom a reduction, however, in his monthly alimony payments from $1,500 to $1,000.

Shortly thereafter, Dorothy agreed to relinquish her past and future claims for alimony against Mr. Lofstrom in exchange for $4,000 cash and Mr. Lofstrom's interest in a contract for deed valued at $29,000. The contract for deed entitled Dorothy to principal and interest payments until the principal was fully paid.[3] Payments under the contract for deed were to be made irrespective of when Dorothy died.

Petitioners initially deducted as alimony only the $4,000 cash payment on their joint return for 1997. They later amended their return for 1997 and deducted the $29,000 value of the contract for deed. Respondent granted petitioners the $4,000 deduction but denied the $29,000 deduction.

---

[3]The contract for deed was entered into between Mr. Lofstrom, as trustee of the Dennis Lofstrom Trust, and Mark Lofstrom, the son of Mr. Lofstrom and Dorothy. The contract for deed required a $1,408.34 payment upon execution, $4,200 or more annually at a rate of $350 monthly, and interest at a rate of 7.5 percent per year.

Bed and Breakfast and Writing Activity Deductions

Petitioners also deducted expenses related to a B&B that they listed as their principal trade or business on Schedule C, Profit or Loss from Business, for 1997.  Petitioners called the B&B, "Angel's Rest Arrowhead Ranch - Fly In Bed And Breakfast" and listed related gross receipts of $649 and expenses of $19,158.[4]  Petitioners allowed Mr. Lofstrom's daughter and her family to use the B&B rent-free for an unspecified period of time that same year.  Petitioners failed to introduce any evidence that they rented the B&B to anyone else.

In addition, petitioners deducted expenses for Mr. Lofstrom's writing activities in 1997 and 1998. Specifically, petitioners deducted $1,664 for travel expenses and writing supplies in 1997 and $8,413 in 1998.

Respondent mailed petitioners a deficiency notice on December 20, 2002, disallowing their $29,000 alimony deduction for 1997, B&B-related deductions for 1997, and writing activity deductions for 1997 and 1998.  Petitioners timely filed a petition with the Court.

## Discussion

We must decide whether Mr. Lofstrom's transfer of a contract for deed constitutes deductible alimony.  We must also decide

---

[4]Of this amount, $12,622 is depreciation expenses, which petitioners concede.

whether petitioners may deduct B&B expenses and writing activity expenses.  We first address who bears the burden of proof.

Petitioners bear the burden to prove that respondent's determination is wrong.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Moreover, deductions are a matter of legislative grace, and petitioners bear the burden to prove that they are entitled to the claimed deductions.[5]  See New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934); Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).  In addition, where as here petitioners failed to testify, we can presume that their testimony would have been unfavorable.  Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946) (citing Walz v. Fidelity-Phoenix Fire Ins. Co., 10 F.2d 22 (6th Cir. 1926); Equip. Acceptance Corp. v. Arwood Can Mfg. Co., 117 F.2d 442 (6th Cir. 1941); Bomeisler v. M. Jacobson Trust, 118 F.2d 261 (1st Cir. 1941); Hann v. Venetian Blind Corp., 111 F.2d 455 (9th Cir. 1940); Sears, Roebuck & Co. v. Peterson, 76 F.2d 243 (8th Cir. 1935)), affd. 162 F.2d 513 (10th Cir. 1947).

---

[5]Petitioners did not move to shift the burden of proof to respondent.  Sec. 7491(a)(2)(A) and (B).  Nor would petitioners have qualified because they failed to present credible evidence, substantiate their claimed expenses, or maintain adequate books and records.

A.   <u>Deduction for the Value of the Contract for Deed</u>

Next, we address whether petitioners are entitled to deduct as alimony $29,000 for the value of a contract for deed that Mr. Lofstrom transferred to Dorothy in 1997.  Alimony (or separate maintenance) payments are deductible from income by the payor and includable in the income of the payee.  Secs. 61(a)(8), 71(a), 215(a) and (b).  The payments must meet certain requirements to be deductible, however.  See secs. 71, 215.

Among those requirements,[6] payments must be made in cash or a cash equivalent.  See sec. 71(b)(1).  A check or money order that is payable on demand is a cash equivalent.  A debt instrument that is transferred is not.  Sec. 1.71-1T(b), Q&A-5, Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984).

This is the first time that this Court is asked to address whether the transfer of a third-party debt instrument satisfies the requirements to qualify as alimony.  Specifically, we address whether the "contract for deed" that Mr. Lofstrom transferred to

---

[6]Other requirements are that the alimony must be received by a spouse under a divorce or separation instrument, the payments cannot be designated in the divorce or separation instrument as a payment for something other than alimony, the payee spouse and the payor spouse must not be members of the same household at the time of payment, and the payments must terminate at the death of the payee spouse.  Sec. 71(b)(1)(A)-(D).

Dorothy in part satisfaction of Mr. Lofstrom's accrued and future alimony obligations to Dorothy qualifies as alimony.[7]

A contract for deed is a financing arrangement that allows a buyer (or vendee) to purchase property by borrowing the money for the purchase from the seller (or vendor).  In re Butler, 552 N.W.2d 226, 229-230 (Minn. 1996).  Here, Mr. Lofstrom had transferred property to Mark Lofstrom in return for periodic payments from Mark Lofstrom until the full principal amount, with interest, was paid.  The contract for deed represented, therefore, a debt obligation of Mark Lofstrom to Mr. Lofstrom.  Because the contract for deed transferred to Dorothy is a debt instrument of a third party, it does not qualify as a cash payment and is not deductible as alimony.[8]  See secs. 71(b)(1), 215(a); sec. 1.71-1T(b), Q&A-5, Temporary Income Tax Regs.,

---

[7]The Minnesota legislature has sanctioned contracts for deed because they provide a useful alternative financing mechanism, which promotes the availability of credit and the transferability of property.  In re Butler, 552 N.W.2d 226, 229-230 (Minn. 1996) (citing Minn. Stat. sec. 559.205-.216 (1994)).

[8]Further, once Mr. Lofstrom transferred the contract for deed to Dorothy, Mark Lofstrom's liability to make payments under the contract would not end at Dorothy's death.  We note that alimony does not include a liability to make payments after the payee's death.  Sec. 71(b)(1)(D); see also Sugarman v. Commissioner, T.C. Memo. 1996-410 (payments found in the nature of a property settlement rather than alimony where payments would not necessarily have terminated if the taxpayer died before the end of the payment stream because the taxpayer's estate would have had a valid claim for the remainder of the payments).

<u>supra</u>. Accordingly, we sustain respondent's determination disallowing a deduction for the value of the contract for deed.[9]

B. <u>Bed And Breakfast Expenses</u>

We must next determine whether petitioners are entitled to deduct expenses related to operating a B&B on the first floor of their home. Generally, taxpayers are restricted from deducting expenses of their residences, or more specifically, expenses related to a "dwelling unit" that taxpayers use as a personal residence.[10] Sec. 280A(d)(1).

Petitioners admit that they used their dwelling unit, at least in part, as a personal residence. Unless an exception applies, therefore, petitioners may not deduct expenses of their residence. Respondent argues, and we agree, that petitioners failed to substantiate and hence meet their burden to prove that they operated a portion of their residence as a business.

Deducting the business portion of a dwelling unit is restricted. For example, if personal use of the business portion of a dwelling unit exceeds the greater of 14 days or 10 percent

---

[9]We find no merit in petitioners' arguments concerning the doctrines of "constructive receipt" or "origin of claim" to characterize the transfer of the contract for deed as alimony.

[10]This general rule does not apply to those expenses that are deductible regardless of any connection with a trade or business, such as mortgage interest on the residence under sec. 163, real estate taxes under sec. 164, or casualty losses under sec. 165. Sec. 280A(b).

of the number of days the unit is rented at fair rental value, no deduction is allowed.  Sec. 280A(a), (d)(1).  Nor may taxpayers deduct expenses for the portion of a residence not "exclusively" used for business purposes.  See sec. 280A(c)(1), (f)(1)(B); see also Langer v. Commissioner, 989 F.2d 294, 295 (8th Cir. 1993) (affirming this Court's denial of a home office deduction based on taxpayer's failure to show exclusive use); Byers v. Commissioner, 82 T.C. 919, 925 (1984) (rent-free personal use of a unit barred a finding that the unit was used exclusively as a hotel); Grigg v. Commissioner, T.C. Memo. 1991-392, affd. 979 F.2d 383 (5th Cir. 1992).  Personal use includes use by a taxpayer's lineal descendants, unless fair rental value is paid. See sec. 267(c)(4).

Petitioners admit that Mr. Lofstrom's daughter (and her family) used the B&B rent-free for an indefinite period of time in 1997, which constitutes personal use by petitioners.  See sec. 280A(d)(2) and (3).  Because petitioners have not shown how long Mr. Lofstrom's daughter stayed,[11] petitioners have failed to meet their burden that personal use of the B&B did not exceed the greater of 14 days or 10 percent of the number of days that the unit was rented at fair rental value.[12]  See sec. 280A(d)(1),

---

[11]Petitioners vaguely assert that she stayed on a "single occasion."

[12]Nor have petitioners carried their burden to prove that they rented the unit for at least 15 days in 1997.  See sec. 280A(g); Stoddard v. Commissioner, T.C. Memo. 2002-31 (rental (continued...)

(2)(A).  Petitioners have also failed to show that they used the B&B exclusively for business purposes.

Further, petitioners did not substantiate the B&B expenses. They produced no books or records substantiating, among other things, the amount of rent collected, the number of days that guests stayed, or the rates that guests paid.  We are left with little more than petitioners' Schedule C, on which they listed marginal gross income for the B&B and substantial expenses.  A schedule of expenses is not sufficient to meet petitioners' burden, however.  See Cluck v. Commissioner, 105 T.C. 324, 338 (1995) (summary schedules insufficient to entitle taxpayer to claimed deductions).  Accordingly, based upon a lack of substantiation, a general dearth of evidence, and the personal use of the B&B, petitioners are not entitled to deduct any of the disputed expenses for any portion of their residence in 1997.  We therefore sustain respondent's disallowance of the B&B expenses.

C.  Writing Activity Expense

Finally, we must determine whether petitioners may deduct expenses in 1997 and 1998 related to Mr. Lofstrom's writing activities.  The evidence includes manuscripts that Mr. Lofstrom allegedly drafted, including a science fiction novel called "Out of the Mando Galaxy by Nnak Kamon" and a health and fitness book

---

[12](...continued)
expenses not deductible where taxpayer did not rent residence at least 15 days and personal use exceeded 14 days).

called "A Common Sense Approach to Weight Loss, Nutrition, Physical Fitness, and Exercise for the Non-Fanatic of All Ages." We accord little weight to these submissions, however, because respondent did not have the opportunity to cross-examine Mr. Lofstrom at trial. Respondent argues nonetheless that, even considering these manuscripts, petitioners have not shown that Mr. Lofstrom engaged in his writing activities for profit. We agree.

Taxpayers may deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. See sec. 162. To do so, taxpayers must demonstrate that they were involved in the activity on a continuous and regular basis and that their purpose for engaging in the activity was for income or profit. See Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987); Wittstruck v. Commissioner, 645 F.2d 618, 619 (8th Cir. 1981), affg. T.C. Memo. 1980-62; Jasionowski v. Commissioner, 66 T.C. 312, 320-322 (1976); Gentile v. Commissioner, 65 T.C. 1, 4 (1975); sec. 1.183-2(a), Income Tax Regs. Whether the required profit objective exists is determined on the basis of all the facts and circumstances of each case. See Hirsch v. Commissioner, 315 F.2d 731, 737 (9th Cir. 1963), affg. T.C. Memo. 1961-256; Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(a), Income Tax Regs. While a reasonable

expectation of profit is not required, the taxpayer's objective
of making a profit must be bona fide. See Wittstruck v.
Commissioner, supra at 619; Elliott v. Commissioner, 84 T.C. 227,
236 (1985), affd. without published opinion 782 F.2d 1027 (3d
Cir. 1986). The Court gives greater weight to objective factors
in making the factual determination than to a taxpayer's mere
statement of intent. See Indep. Elec. Supply, Inc. v.
Commissioner, 781 F.2d 724 (9th Cir. 1986), affg. Lahr v.
Commissioner, T.C. Memo. 1984-472; Dreicer v. Commissioner, 78
T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C.
Cir. 1983); sec. 1.183-2(a), Income Tax Regs.

We consider several factors[13] in determining whether
Mr. Lofstrom was engaged in the writing activity for profit,
including the manner in which he carried on the activity, the
time and effort he expended on the activity, the history of
income or loss with respect to the activity, and the amount of

---

[13]The Court generally considers nine nonexclusive factors
for determining whether taxpayers engaged in an activity for
profit. Sec. 1.183-2(b), Income Tax Regs. Petitioners here
failed to produce relevant evidence regarding many of the
factors, and we consequently confine our analysis to four of the
nine factors. The nine factors are: (1) The manner in which the
taxpayer carried on the activity; (2) the expertise of the
taxpayer or his advisers; (3) the time and effort expended by the
taxpayer in carrying on the activity; (4) the expectation that
the assets used in the activity may appreciate in value; (5) the
success of the taxpayer in carrying on other activities for
profit; (6) the taxpayer's history of income or losses with
respect to the activity; (7) the amount of occasional profits, if
any, which are earned; (8) the financial status of the taxpayer;
and (9) elements of personal pleasure or recreation. Id.

any profits that he earned. Sec. 1.183-2(b)(1)-(9), Income Tax Regs. The individual facts and circumstances of each case are the primary test, and no factor or set of factors is necessarily controlling. See Hendricks v. Commissioner, 32 F.3d 94, 98 (4th Cir. 1994), affg. T.C. Memo. 1993-396; Brannen v. Commissioner, 722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982); Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Allen v. Commissioner, 72 T.C. 28, 34 (1979); sec. 1.183-2(b), Income Tax Regs.

Petitioners failed to identify the amount of time that Mr. Lofstrom spent writing during the years at issue or whether he had anything published.[14] Nor did petitioners report any gross or net income on their returns for Mr. Lofstrom's writing activities. Rather, petitioners reported a string of losses, in the years at issue and in 3 prior years (from 1994 to 1998). These factors, taken together, indicate that Mr. Lofstrom was not involved in the writing activity for profit.[15] See Zuckerman v. Commissioner, T.C. Memo. 1984-192 (substantial income from other

---

[14]Petitioners claimed, in their answers to interrogatories, that Mr. Lofstrom writes "many nights and weekends" and once had "100 copies" of something "distributed free of charge."

[15]The only information petitioners offered to prove Mr. Lofstrom's profit motive was a day-of-trial deluge of miscellaneous handwritten notes, correspondence with publishers, a typewritten "novel", and hundreds of handwritten notes on health, fitness, and dieting. We accord little weight to these documents because Mr. Lofstrom did not testify.

sources, losses over a number of years, and tax benefits are features characteristic of an activity not operated for profit). Accordingly, we find that petitioners failed to meet their burden to establish that Mr. Lofstrom engaged in his writing activities with a bona fide profit objective.

Conclusion

We sustain respondent's determinations in the deficiency notice for 1997 and 1998.  In reaching our holding, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.