**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-74

UNITED STATES TAX COURT

LAUREN ELIZABETH MILLER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11018-13S.                    Filed July 28, 2014.

<u>John Paul Barrie</u>, for petitioner.

<u>Eugene A. Kornel</u> and <u>Rebekah A. Myers</u>, for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
                                                                    (continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $5,340 in petitioner's Federal income tax for 2009 and an accuracy-related penalty of $1,068 pursuant to section 6662(a). Petitioner filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioner resided in New York.

The issues for decision are whether petitioner is (1) entitled to a deduction for unreimbursed employee business expenses reported on Schedule A, Itemized Deductions, and (2) liable for an accuracy-related penalty under section 6662(a).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts, the first supplemental stipulation of facts, and the accompanying exhibits are incorporated herein by this reference.

---

[1](...continued)
Code (Code), as amended and in effect for 2009, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

## I. Petitioner's Employment

BrandingIron Worldwide, Inc. (BIW), is headquartered in Los Angeles, California, and provides public relations, marketing, and advertising services. In early 2008 Jorg Wallrabe, BIW's owner and president, hired petitioner to serve as the company's account director in New York City. Petitioner was responsible for managing existing client accounts, hosting press events, producing style guides, and assisting clients with product line development and communications. She was also expected to attempt to recruit new clients. At the time she was hired, petitioner was BIW's only employee in New York.

BIW did not have an office space in New York City, and petitioner initially was required to work out of a client's showroom. BIW's relationship with that client ended shortly after petitioner was hired, and Mr. Wallrabe then asked her to work from her studio apartment until he could obtain commercial office space.

BIW never obtained its own office space, and petitioner used part of her apartment as an office throughout 2009. BIW listed petitioner's apartment address and telephone number on its Web site as the address and phone number for its New York office. Petitioner usually worked weekdays between 9 a.m. and 7 p.m., but she generally was expected to be available at all times.

II. Petitioner's Expenses

A. Petitioner's Apartment

1. The Layout

Petitioner's studio apartment was a single room with a total living area of 700 square feet. She provided a sketch of the apartment in which the space is divided into three equal sections: (1) an entryway, a bathroom, and a kitchen area; (2) office space, including a desk, two shelving units, a bookcase, and a sofa; and (3) a bedroom area including a platform bed and dressers. Petitioner had to pass through the office space to get to the bedroom area.

2. Use of the Office Space

Petitioner frequently met with BIW clients in the office space, and she performed work for BIW using a computer on the desk. The bookcase and shelving units were used to store books, magazines, supplies, and samples related to petitioner's work for BIW and its clients. Although she used the office space primarily for business purposes, she occasionally used the space for personal purposes.

3. Apartment Expenses

Petitioner paid rent of $26,200 and cleaning service charges of $1,680 during 2009. She also paid $1,896 to TimeWarner Cable (TimeWarner) for a

package of services that included cable television, a telephone line, and wireless Internet access. Petitioner used the cable television exclusively for personal use, the telephone line exclusively for business purposes, and the wireless Internet access for both personal and business purposes. Petitioner estimated that approximately 70% of her wireless Internet use was business related.

B. Transportation and Meals and Entertainment Expenses

Petitioner attempted to recruit new clients for BIW by visiting showrooms, attending meetings, and taking potential clients to lunch. She normally traveled by taxi to these meetings.

C. Uniforms

BIW specified the style and color of clothing that employees were expected to wear to BIW events and productions. Employees were not obliged to display a BIW logo or similar distinctive marking on their clothing.

During 2009 petitioner purchased three black evening dresses to wear to BIW events. Although petitioner acknowledged that the dresses were suitable for personal use, she testified that she wore the dresses only to BIW events because they did not fall within her "personal aesthetic".

### D. Cellular Phone

Petitioner paid $992 to Verizon Wireless for cellular phone service from July through December 2009.[2] She used her cellular phone for both business and personal purposes.

### III. BIW's Reimbursement of Employee Expenses

BIW did not maintain a formal employee expense reimbursement policy. Petitioner understood that BIW was struggling financially, that the company's business was not growing, particularly in New York, and that she would be reimbursed only for expenses that BIW could itemize and bill directly to its clients. The record includes three expense reports that petitioner submitted to BIW for relatively modest expenditures (e.g., taxi fares and small gifts to clients) that she made in February, May, and August 2009.

Although petitioner had numerous conversations with Mr. Wallrabe about the need for a formal office space, he repeatedly assured her that the company was on the verge of renting commercial space. BIW did not reimburse petitioner for any of the expenses related to her apartment or her attempts to recruit new clients.

---

[2]Petitioner's parents paid her Verizon Wireless charges for the first six months of 2009.

IV. Petitioner's Records

A. Original Records

Petitioner testified that she maintained complete and accurate records in respect of her business expenses for 2009, including meeting logs, receipts and invoices for various expenditures, and reimbursements from BIW. Petitioner lost most of her business records when she moved to a new apartment in 2011, including records of reimbursements that she received from BIW.

B. Spreadsheets

Petitioner produced three spreadsheets that were created in the spring of 2010 in conjunction with the preparation of her 2009 tax return. The first spreadsheet lists the amounts petitioner paid during 2009 for rent, electric utility charges, cleaning services, and TimeWarner and Verizon Wireless charges. The second spreadsheet lists miscellaneous expenditures related to petitioner's work for BIW as follows: taxi fares of $545, meals and entertainment expenses of $321, uniform expenses of $2,093, office supplies of $117, and "R&D" of $31. The spreadsheet lists the date and amount of each expenditure, but it does not identify the business purpose for individual expenditures. The third spreadsheet provides a breakdown of the amounts that petitioner paid to TimeWarner and Verizon Wireless.

C. <u>Checking Account Statements</u>

Petitioner's monthly checking account statements for 2009 show that BIW normally paid her by wire transfer. A comparison of the amounts that BIW transferred to petitioner's account during 2009 and the wages that BIW reported on Form W-2, Wage and Tax Statement, for that year suggests that BIW did not reimburse her for many of her employment-related expenses.

The account statements show that petitioner took numerous taxi trips around New York City, she occasionally dined out, and she purchased clothing and office supplies. The account statements corroborate most, if not all, of the expenses that petitioner reported on her spreadsheets for rent, cleaning services, and TimeWarner and Verizon Wireless charges.

V. <u>Tax Return</u>

On her timely filed Form 1040, U.S. Individual Income Tax Return, petitioner reported wage income of $48,680, and she claimed a deduction of $34,933 on Schedule A for unreimbursed employee business expenses (before the application of the 2% floor prescribed in section 67(a)). Petitioner attached Form 2106, Employee Business Expenses, to her return listing the following: parking fees, tolls, and transportation expenses of $553, meals and entertainment expenses

of $299 (before the application of the 50% limitation prescribed in sec. 274(n)), and unspecified expenses of $34,230.

## VI. Tax Return Preparation

Petitioner provided her tax records, including original receipts and invoices of her business expenses for 2009, to Michael Letta.[3] Mr. Letta used TurboTax software to prepare and electronically file petitioner's tax return.

Mr. Letta earned a bachelor's degree from Ohio State University and is a certified public accountant. At the time of trial, Mr. Letta was working as the chief financial officer for Charity Water in New York. He testified that he reviewed petitioner's tax records, considered them to be complete and accurate, and discussed the return with her before filing it. When he learned that many of petitioner's original tax records had been lost, Mr. Letta contacted TurboTax in what turned out to be an unsuccessful attempt to retrieve worksheets that he completed while preparing the return for electronic filing.

## VII. Notice of Deficiency

Respondent disallowed the deduction that petitioner claimed on Schedule A for unreimbursed employee business expenses on the alternative grounds that she failed to substantiate the expenses and the expenses were not ordinary and

---

[3]Petitioner married Mr. Letta in August 2013.

necessary business expenses within the meaning of section 162(a). Respondent computed petitioner's tax liability for 2009 after allowing her a standard deduction of $5,700.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). As discussed in detail below, petitioner did not comply with the Code's substantiation requirements and has not maintained all required records. Therefore, the burden of proof as to any relevant factual issue does not shift to respondent under section 7491(a). See sec. 7491(a)(1) and (2); Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).

Deductions are a matter of legislative grace, and the taxpayer generally bears the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer must substantiate deductions claimed by keeping and producing adequate records that enable the Commissioner to determine the taxpayer's correct tax liability. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd per curiam, 540 F.2d 821 (5th Cir.

1976); Meneguzzo v. Commissioner, 43 T.C. 824, 831-832 (1965).  A taxpayer claiming a deduction on a Federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. at 89-90.

When a taxpayer establishes that he or she paid or incurred a deductible expense but fails to establish the amount of the deduction, the Court normally may estimate the amount allowable as a deduction.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  There must be sufficient evidence in the record, however, to permit the Court to conclude that a deductible expense was paid or incurred in at least the amount allowed.  Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

I.  Unreimbursed Employee Business Expenses

Under section 162(a), a deduction is allowed for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact.  See Commissioner v. Heininger, 320 U.S. 467, 475 (1943).  The term "trade or business" includes performing services as an employee.  Primuth v. Commissioner, 54 T.C. 374, 377-

378 (1970). However, expenses for which an employee could claim reimbursement from his or her employer, but does not, are not ordinary and necessary expenses. See Podems v. Commissioner, 24 T.C. 21, 22-23 (1955). A deduction normally is not available for personal, living, or family expenses. Sec. 262(a).

Section 274(d) prescribes stringent substantiation requirements to be met before a taxpayer may deduct certain categories of expenses, including transportation expenses, meals and entertainment expenditures, and expenses related to the use of listed property as defined in section 280F(d)(4)(A). See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). As relevant here, the term "listed property" includes, inter alia, cellular phones. Sec. 280F(d)(4)(A)(v). To satisfy the requirements of section 274(d), a taxpayer generally must maintain records and documentary evidence which, in combination, are sufficient to establish the amount, date, and business purpose for a covered expenditure or business use of listed property. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Section 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985), provides in relevant part that "adequate records" generally consist of an account book, a diary, a log, a statement of expense, trip sheets, or a similar

record made at or near the time of the expenditure or use, along with supporting documentary evidence. The Court may not use the rule established in Cohan v. Commissioner, 39 F.2d at 543-544, to estimate expenses covered by section 274(d). Sanford v. Commissioner, 50 T.C. at 827; sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Taxpayers lacking a contemporaneous log are expected to maintain a record created as near in time as possible to the particular expenditure or business use (including the elements outlined above), supported by corroborative documentary evidence that carries with it a high degree of probative value. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).

A. Business Use of Home

A taxpayer generally is not entitled to deduct any expenses related to a dwelling unit used as a residence during the taxable year. Sec. 280A(a). Expenses attributable to a home office are excepted from this general rule, however, if the expenses are allocable to a portion of the dwelling unit which is exclusively used on a regular basis as the principal place of business for the taxpayer's trade or business. Sec. 280A(c)(1); Lofstrom v. Commissioner, 125 T.C. 271, 277-278 (2005). If the taxpayer is an employee, the exception under section 280A(c)(1)

will apply only if the exclusive use of the office space is for the convenience of the taxpayer's employer.  Hamacher v. Commissioner, 94 T.C. 348, 353-354 (1990).

BIW listed petitioner's apartment address on its Web site as the address for its New York office.  Petitioner testified credibly that she regularly used one-third of her apartment space as an office to conduct BIW business, she met with clients there, and she was expected to be available to work well into the evening.  On this record, we are persuaded that petitioner's apartment was her principal place of business, that she was obliged to use the space as an office for the convenience and benefit of BIW, and that BIW was not able or willing to reimburse her for any of her apartment-related expenses (including the TimeWarner charges discussed below).

Although petitioner admitted that she used portions of the office space for nonbusiness purposes, we find that her personal use of the space was de minimis and wholly attributable to the practicalities of living in a studio apartment of such modest dimensions.  See Hughes v. Commissioner, T.C. Memo. 1981-140.

Petitioner paid rent of $26,200 and cleaning service charges of $1,680 during 2009.  Consistent with the preceding discussion, we hold that petitioner is entitled to a deduction of $9,293 for the business use of her apartment (i.e., one-third of her rent and cleaning service charges for the year).

B.  TimeWarner Charges

Petitioner paid $1,896 to TimeWarner for a package of services that included cable television, a telephone line, and wireless Internet access.  Although the record is not entirely clear as to the precise allocation of the TimeWarner charges among the three services, there is sufficient evidence in the record to justify dividing the charges equally among them.

Petitioner admitted that she used the cable television service exclusively for personal use.  Consequently, she is not entitled to deduct the portion of the TimeWarner charges attributable to cable television.  See sec. 262(a).

Petitioner testified credibly that the apartment telephone line was used exclusively for business purposes.  Indeed, BIW listed petitioner's telephone number on its Web site as the contact number for its New York office.  Under the circumstances, we conclude that maintaining the telephone line was an ordinary and necessary business expense.  See, e.g., Trescott v. Commissioner, T.C. Memo. 2012-321, at *9.

Section 262(b) provides that any charge for basic local telephone service with respect to the first telephone line provided to a taxpayer's residence shall be treated as a nondeductible personal expense.  Although petitioner provided some information related to the breakdown of the TimeWarner charges for the telephone

line, the record is silent regarding the exact charge, if any, for local telephone service. Under the circumstances, we will apply the <u>Cohan</u> rule and estimate the amount allowable as a deduction.[4] Allocating one-half of the charge for the telephone line to local telephone service, we hold that petitioner is entitled to a deduction of $316 for the telephone line.

Petitioner testified credibly that she used the wireless Internet service for both personal and business purposes. She estimated that approximately 70% of her wireless Internet use was business related. Although petitioner did not offer a log or other record of her wireless Internet use, we have held that Internet access expenses are not subject to the strict substantiation requirements of section 274(d). <u>See</u> <u>Noz v. Commissioner</u>, T.C. Memo. 2012-272, at *22-*23 (and cases cited thereat). Considering all the circumstances, we conclude that the cost of wireless Internet access was an ordinary and necessary business expense and we accept as reasonable petitioner's estimate that approximately 70% of her wireless Internet use was business related. As a result, she is entitled to a deduction of $442 (i.e., 70% of the TimeWarner charges attributable to that service).

---

[4]Considering the constant evolution of telecommunications systems and the manner in which consumers pay for various telecommunications services, it may be that petitioner simply paid a flat rate for the telephone line. Lacking a definitive breakdown of the charges, however, we will assume that one-half of the charge for the telephone line is attributable to local phone service.

C. Electric Utility Charges

Petitioner produced a spreadsheet indicating that she paid $1,176 for electric utility charges for her apartment during 2009. Although we do not doubt that petitioner paid electric utility charges, she did not offer any testimony or additional documentation (such as paid receipts or copies of her electric bills) to substantiate the expense. Without more, we are unable to apply the Cohan rule to estimate the amount of a deduction for electric utility charges, and no deduction is allowed for this item.

D. Meals and Entertainment and Transportation Expenses

Petitioner claimed deductions of $299 and $553 for meals and entertainment and transportation expenses, respectively. Although petitioner's bank statements show that she dined out on occasion and took numerous trips by taxi, deductions for such expenses are subject to the strict substantiation requirements of section 274(d). Petitioner failed, however, to provide any logs or other records (original or reconstructed) in support of her testimony that the expenditures had a business purpose. In the absence of corroborating evidence supporting petitioner's statement, respondent's determination disallowing a deduction for meals and entertainment and transportation expenses is sustained.

E. Cellular Phone Charges

Petitioner paid $992 to Verizon Wireless for cellular phone service during the second half of 2009. As previously mentioned, cellular phones constitute listed property under section 280F(d)(4)(A)(v) as in effect during 2009, and, therefore, cellular phone expenses are subject to the strict substantiation requirements of section 274(d).[5] Although petitioner admitted that she used her cellular phone for both business and personal purposes, she did not produce a written log, a reasonable reconstruction of the same, or other secondary evidence corroborating her testimony that would satisfy the requirements of section 274(d). As a result, we conclude that she is not entitled to a deduction for cellular phone expenses.

F. Uniform Expenses

Petitioner maintains that she is entitled to a deduction of $2,093 for evening dresses that she purchased to attend BIW events during 2009. The cost of clothing "required or essential in an employment, and which are not suitable for general or

---

[5]Although it is of no help to petitioner, we note that sec. 280F(d)(4) was amended by the Small Business Jobs Act of 2010, Pub. L. No. 111-240, sec. 2043(a), 124 Stat. at 2560, which removed cellular phones (and similar telecommunications equipment) from the definition of listed property. The amendment is effective for taxable years beginning after December 31, 2009. Id. sec. 2043(b).

personal wear and not so worn, is a deductible item in arriving at taxable net income". Yeomans v. Commissioner, 30 T.C. 757, 767 (1958); see Wasik v. Commissioner, T.C. Memo. 2007-148; Beckey v. Commissioner, T.C. Memo. 1994-514. The record reflects that petitioner was not required to wear a uniform to work, and she admitted that the dresses that she purchased and wore to BIW events were also suitable for personal wear. Therefore, petitioner is not entitled to a deduction for these items. See sec. 262(a).

### G. Office Supplies and R&D

Petitioner claimed a deduction for office supplies of $117 and "R&D" of $31. Although petitioner's checking account statements show that she made purchases at office supply stores, there is no evidence in the record describing the specific items that she purchased, nor did she refer to these items when she testified at trial. Under the circumstances, we are unable to determine whether the items constitute ordinary and necessary business expenses that may be deducted pursuant to section 162(a). Accordingly, we sustain respondent's determination disallowing a deduction for office supplies and R&D expenses.

## II. Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) imposes a penalty equal to 20% of the amount of any underpayment of tax that is attributable to, among other things,

(1) negligence or disregard of rules or regulations or (2) any substantial understatement of income tax. The term "negligence" includes any failure to make a reasonable attempt to comply with tax laws, and "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c). An understatement means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A). An understatement is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

With respect to an individual taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. at 446-447. Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. Id. at 447; see Rule 142(a); Welch v. Helvering, 290 U.S. at 115.[6]

---

[6]We assume for the sake of discussion that respondent has discharged his burden of production under sec. 7491(c) by showing that petitioner had a

(continued...)

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Reliance on a tax professional may demonstrate that the taxpayer had reasonable cause and acted in good faith where the taxpayer establishes that: (1) the adviser was a competent professional with sufficient expertise to justify the taxpayer's reliance, (2) the taxpayer provided the adviser with necessary and accurate information, and (3) the taxpayer actually relied in good faith on the adviser's judgment. 3K Inv. Partners v. Commissioner, 133 T.C. 112, 117 (2009); DeCleene v. Commissioner, 115 T.C. 457, 477 (2000).

Petitioner provided her tax records to Mr. Letta, a certified public accountant, and she consulted with him regarding deductions for her business expenses. Mr. Letta reviewed petitioner's tax records, considered them to be complete and accurate, and discussed the return with her before filing it. When he

6(...continued)
substantial understatement for 2009.

learned that many of petitioner's original tax records had been lost, Mr. Letta

contacted TurboTax in an ultimately unsuccessful attempt to retrieve worksheets

that he completed while preparing the return for electronic filing.

Considering all the circumstances, we conclude that petitioner reasonably

relied on Mr. Letta to assist her in preparing a proper tax return for 2009. We

likewise conclude that there was reasonable cause for, and petitioner acted in good

faith with respect to, the underpayment in this case. Sec. 1.6664-4(a), Income Tax

Regs. Consequently, we hold that petitioner is not liable for an accuracy-related

penalty for 2009.

To reflect the foregoing,

Decision will be entered

under Rule 155.