T.C. Summary Opinion 2015-12

UNITED STATES TAX COURT

JOHN SANGER RINGBLOOM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 139-13S.                    Filed February 23, 2015.

John Sanger Ringbloom, pro se.

<u>Patsy A. Clarke</u> and Sharan Sekhon (student), for respondent.

SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions

of section 7463 of the Internal Revenue Code in effect when the petition was

filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by

_____

[1]Unless otherwise indicated, section references are to the Internal Revenue
Code, as amended and in effect for 2010, and Rule references are to the Tax Court
(continued...)

any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $4,177 in petitioner's Federal income tax for 2010. Petitioner filed a timely petition for redetermination with the Court pursuant to section 6213(a). At the time the petition was filed, petitioner resided in Oregon.

The sole issue for decision is whether petitioner is entitled to an alimony deduction in excess of the $6,920 that respondent conceded.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference.

## I. Petitioner's Marriage and Divorce

Petitioner married Beatrix Ringbloom in September 1992. The couple legally separated in October 2008, and they were divorced in May 2013.

## II. Agreed Amended Decree of Legal Separation

In April 2009, when petitioner was unemployed, he and Ms. Ringbloom executed an agreed amended decree of legal separation (amended decree) to

---

[1](...continued)
Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

ensure that Ms. Ringbloom would receive spousal maintenance payments.

Specifically, petitioner agreed to make 48 monthly maintenance payments of

$2,289 to Ms. Ringbloom, including an advance payment in the form of a transfer

of an interest in his individual retirement account (IRA). The amended decree

states in relevant part:

> THE HUSBAND HAS AGREED TO A PREPAYMENT OF
> SPOUSAL MAINTENANCE FOR A PERIOD OF 17 MONTHS.
> THE HUSBAND IS TRANSFERRING HIS INTEREST IN HIS IRA
> TOTALLING $38,913 FOR 17 MONTHS OF SPOUSAL
> MAINTENANCE PAYMENTS. THE HUSBAND'S FIRST
> TRANSFER PAYMENT AFTER ENTRY OF THIS ORDER SHALL
> BE DUE ON SEPT. 1, 2010.

Exhibit M to the amended decree states that maintenance payments are considered

taxable income to Ms. Ringbloom and tax deductible by petitioner. Further,

petitioner's obligation to make maintenance payments would terminate upon Ms.

Ringbloom's remarriage or death.

Petitioner complied with the amended decree and transferred an interest in

his IRA totaling $38,913 to Ms. Ringbloom in April 2009. While petitioner could

not recall whether he had claimed a deduction on his 2009 Federal income tax

return for alimony paid, respondent's records indicate that he did not.

Petitioner testified that after the transfer, Ms. Ringbloom made monthly

withdrawals of $2,289 from the IRA, presumably until $38,913 was exhausted.

The record, however, does not reflect the timing or the amounts of any payments or distributions from the IRA to Ms. Ringbloom. Petitioner made monthly maintenance payments by check to Ms. Ringbloom during the last four months of 2010.

III. Tax Return

Petitioner timely filed a Form 1040, U.S. Individual Income Tax Return, for 2010, deducting $27,468 for alimony paid. Petitioner computed the deduction by multiplying $2,289 (his monthly alimony obligation) by 12 (months) in an effort to account for amounts that he assumed Ms. Ringbloom withdrew from the IRA in 2010 and cash payments that he made to her during the last four months of the year.

IV. Developments at Trial

Respondent conceded at trial that petitioner paid $6,920 in alimony to Ms. Ringbloom (by check) in 2010.[2] Respondent maintained, however, that any amounts that Ms. Ringbloom may have withdrawn from the IRA during 2010 did not qualify as alimony paid by petitioner for that year.[3]

_____

[2]Petitioner does not assert that he paid any more than $6,920 by check to Ms. Ringbloom in 2010.

[3]The record does not include copies of Ms. Ringbloom's Federal income tax
(continued...)

Discussion

I.  Burden of Proof

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and taxpayers generally bear the burden of proving their entitlement to any deductions they claim.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  Petitioner does not contend that the burden of proof should be shifted to respondent under section 7491(a).

II.  Nonrecognition of IRA Transfer

As a general rule, no gain or loss is recognized on a transfer of property from an individual to his or her former spouse if the transfer is incident to divorce. Sec. 1041(a).  In accord with this proposition, section 408(d)(6) provides:

> (6) Transfer of account incident to divorce.--The transfer of an individual's interest in an individual retirement account or an individual retirement annuity to his spouse or former spouse under a divorce or separation instrument described in subparagraph (A) of section 71(b)(2) is not to be considered a taxable transfer made by such individual notwithstanding any other provision of this subtitle, and such interest at the time of the transfer is to be treated as an individual retirement account of such spouse, and not of such

---

[3](...continued)
return for 2009 or 2010, and the parties did not provide any other documentation identifying the income, if any, that she reported in respect of alimony or separate maintenance payments that she received in 2009 and 2010.

individual.  Thereafter such account or annuity for purposes of this subtitle is to be treated as maintained for the benefit of such spouse.

Consistent with section 408(d)(6), the transfer of an interest in petitioner's IRA to Ms. Ringbloom in April 2009 in accordance with the provisions of the amended decree was a nontaxable event to both parties.  See Bunney v. Commissioner, 114 T.C. 259, 264-265 (2000).  Under the circumstances, Ms. Ringbloom was obliged to include in her gross income (in the manner provided under section 72) those amounts, if any, subsequently paid or distributed to her from the IRA.  See sec. 408(d)(1).  As previously mentioned, the record does not include any objective evidence of the timing or amounts of any distributions that Ms. Ringbloom may have taken from the IRA in 2009 or 2010.

III.  Alimony Paid Deduction

In contrast to the treatment normally afforded divisions of marital property incident to divorce, section 215(a) and (b) allows a deduction to the paying spouse for the alimony or separate maintenance payments, as defined in section 71(b), made during the paying spouse's tax year that are includible in the recipient spouse's gross income under section 71.  The term "alimony or separate maintenance payment" is defined in section 71(b)(1) as follows:

>      (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Each of the elements prescribed in section 71(b)(1) must be satisfied before a payment qualifies as alimony or separate maintenance. See Sa'd v. Commissioner, T.C. Memo. 2012-348, at *9. The characterization of payments in a divorce or separation instrument as alimony or separate maintenance is not controlling. See Baker v. Commissioner, T.C. Memo. 2000-164.

Only payments in cash qualify as alimony or separate maintenance payments as defined in section 71(b). See Lofstrom v. Commissioner, 125 T.C. 271, 276 (2005). "This requirement is one of several rules designed to establish an objective, albeit rough, distinction between support payments and property

settlements. Property settlements typically consist of in kind divisions of a couple's property, while support payments are usually in cash." Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates and Gifts, para. 77.1.2, at 77.7 (3d ed. 2003). In this regard, section 1.71-1T(b), Q&A-5, Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984) provides:

> Q-5. May alimony or separate maintenance payments be made in a form other than cash?
>
> A-5. No. Only cash payments (including checks and money orders payable on demand) qualify as alimony or separate maintenance payments. Transfers of services or property (including a debt instrument of a third party or an annuity contract), execution of a debt instrument by the payor, or the use of property of the payor do not qualify as alimony or separate maintenance payments.

Consistent with the terms of the amended decree, petitioner's transfer of an interest in his IRA to Ms. Ringbloom served to satisfy his legal obligation to make maintenance payments to her for 17 months spanning the taxable years 2009 and 2010. Although it is debatable whether the transfer constituted a "payment in cash" within the meaning of section 71(b), we need not resolve that question here. Rather, assuming for the sake of argument that the transfer amounted to a payment in cash, petitioner made the payment during the taxable year 2009, as opposed to 2010. See Melvin v. Commissioner, T.C. Memo. 2008-115 (a lump-sum alimony payment normally is deductible in the year paid), aff'd, 303 Fed. Appx. 791 (11th

Cir. 2008). Consequently, any deduction for the alimony that petitioner paid in connection with the transfer of an interest in his IRA to Ms. Ringbloom is properly claimed under section 215(a) and (b), if at all, for the taxable year 2009.

Equally important, we note that no provision in the amended decree addressed the disposition of the transferred interest in the IRA in the event of Ms. Ringbloom's untimely death (i.e., before the expiration of the 17-month period ending September 1, 2010). Considering all of the circumstances, we assume that any assets remaining in the IRA would have been paid to Ms. Ringbloom's estate or to any beneficiaries she might designate--a disposition that would be contrary to the requirement in section 71(b)(1)(D) that there be "no liability to make any such payment for any period after the death of the payee spouse". See Sugarman v. Commissioner, T.C. Memo. 1996-410 (analyzing State law and finding payments to be in the nature of a property settlement rather than alimony/separate maintenance where payments would not necessarily have terminated if the taxpayer died before the end of the payment stream because the taxpayer's estate would have had a valid claim for the remainder of the payments).[4]

---

[4]Petitioner has not invited the Court's attention to any applicable provision of State law that would alter our holding in this case.

Consistent with the preceding discussion, we conclude that petitioner is not entitled to a deduction for alimony paid in excess of the amount respondent has conceded.

To reflect the foregoing,

Decision will be entered

under Rule 155.
